UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

SAMUEL PADILLA and DOMINIC AMATO,

                              Plaintiffs,

                              -against-

YESHIVA UNIVERSITY and 1199 SEIU
UNITED HEALTHCARE WORKERS EAST,

                              Defendants.

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/7/2016

15-CV-9203 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

       Plaintiffs Samuel Padilla ("Padilla") and Dominic Amato ("Amato") were terminated in a 2015 reduction in force related to the merger of Yeshiva University's medical school ("Yeshiva") into Montefiore Medicine Academic Health System, Inc. ("Montefiore"). Plaintiffs bring claims against Yeshiva for breach of the lay-off and seniority provisions of their collective bargaining agreement (the "CBA") and against their union, 1199 SEIU United Healthcare Workers East (the "Union"), for breach of the Union's duty of fair representation. Plaintiffs also assert claims against Yeshiva for retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and discrimination on the basis of disability under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* Yeshiva and the Union have moved to dismiss all claims, and Plaintiffs cross-moved for leave to amend their complaint a second time. Dkts. 26, 34, 39.[1] For the reasons that follow, Defendants' Motions to Dismiss are GRANTED, and Plaintiffs' Motion for Leave to Amend is DENIED.

---

[1] Plaintiffs previously amended their complaint in response to an earlier motion to dismiss filed by defendants. Dkt. 21.

## BACKGROUND

At the time of their termination, both plaintiffs were Grade VIII carpenter mechanics at Yeshiva. FAC ¶¶ 22, 24. On April 21, 2015, Padilla and Amato received WARN Act notices, informing them that their positions would be eliminated effective June 30, 2015, as a part of Yeshiva's combination with Montefiore. *Id.* ¶¶ 26-27. At the time, both plaintiffs were approved for intermittent disability leave under the FMLA. *Id.* ¶¶ 23, 25; Proposed Second Amended Complaint ("SAC"), Dkt. 41-1 ¶¶ 31, 38.

As senior employees, Padilla and Amato were allegedly entitled to "bumping rights" under the CBA. FAC ¶¶ 29-30. Bumping rights give more senior employees the right to "bump," or displace, more junior employees in the event of a reduction in force. *Id.* ¶¶ 28, 29. Bumping rights ensure that layoffs occur in reverse order of seniority—newer employees are laid off before more senior employees.

Both Plaintiffs allege that they were entitled to bump more junior employees. Amato alleges that on June 30, 2015, he asked to bump into another position at Yeshiva. *Id.* ¶ 30. He was on Workers Compensation leave at the time, and Yeshiva responded that it could not address Amato's request "until such time that [Amato] [was] medically cleared to return to work." *Id.*; Declaration of Renee Coker dated Mar. 11, 2016 ("Coker Decl."), Dkt. 27 Ex. C (Letter from Yvonne M. Ramirez to Dominick[sic] Amato, July 20, 2015) at 1. The FAC does not allege any further contact between Amato and Yeshiva, and he was terminated some time in July.[2]

---

[2] The FAC's chronology is not a model of clarity. The FAC references the June 30, 2015, letter from Yeshiva to Amato, but it does not describe any events between then and Amato's filing of this lawsuit. FAC ¶ 30. While the FAC also references an alleged statement by Yeshiva employee Karen Rosenthal to Amato on June 25, 2015, that Yeshiva would advise Amato as to next steps in the bumping process, *id.* ¶ 31, the FAC does not specify whether this statement was oral or in writing, or under what circumstances it was made. The Court has pieced together factual allegations from the FAC and the SAC when necessary to construct the chronological sequence of events.

The FAC does not allege when or how Padilla asked to exercise his bumping rights. FAC ¶ 38. Nonetheless, correspondence submitted by Yeshiva in support of its motion to dismiss shows that Padilla was offered a temporary position as a grade IV carpenter on July 20, 2015. Coker Decl. Ex. E (Letter from Yvonne M. Ramirez to Samuel Padilla dated July 29, 2015) at 1. Padilla evidently did not accept Yeshiva's offer and was terminated on August 31, 2015. FAC ¶ 26.

As unionized employees, both Plaintiffs were bound by the grievance procedures of the CBA. On some unspecified date, Padilla filed a grievance against Yeshiva. FAC ¶ 18. That grievance was denied after a hearing. *Id.* ¶ 19. Subsequently, the Union informed Padilla that it would not pursue his grievance further in arbitration. *Id.* ¶ 20. In contrast to Padilla, Amato never filed a grievance or otherwise sought review of his termination through the Union. SAC ¶ 24.

Both Amato and Padilla bring four claims arising out of their termination, three against Yeshiva and one against the Union. Both Plaintiffs allege hybrid claims based on Yeshiva's breach of the bumping rights contained in the CBA and the Union's related breach of its duty of fair representation in failing to submit their grievances to arbitration. FAC ¶¶ 45, 51. As to Yeshiva, Plaintiffs also allege: a common law breach of contract claim based on the same breach of the CBA, *id.* ¶ 32; that they were terminated in retaliation for exercising their rights under the FMLA, *id.* ¶¶ 54, 57; and that they were discriminated against on the basis of their disabilities, *id.* ¶¶ 60, 65.

Plaintiffs have also filed their above-referenced SAC in connection with their Motion for Leave to Amend. The SAC adds a few factual allegations in an attempt to shore up their claims.[3]

---

[3] Whether Plaintiffs will be permitted to again amend their complaint depends, in part, on whether their supplemental allegations would state a plausible claim for relief. Accordingly, the Court will assume for purposes

To support their allegations against the Union, the SAC alleges that Amato "believed he [had] no chance of receiving a fair hearing" because the Union was "hostile and discriminatory towards him," SAC ¶ 24, and that the Union provided no reason for its decision not to press Padilla's grievance in arbitration, *id.* ¶¶ 21-22. To provide additional support for their allegations of retaliation (and discrimination), Plaintiffs allege that their supervisor "admonished and yelled" when Padilla called out sick and when Amato missed work because of his disability. *Id.* ¶¶ 32, 37. They also allege that Yeshiva gave them inconsistent reasons for their termination, at first claiming that budget cuts necessitated the layoffs before attributing them to the merger with Montefiore.[4] *Id.* ¶ 40.

## DISCUSSION

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.,* 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC,* 709 F.3d 109, 120 (2d Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). In deciding a motion to dismiss, courts must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *L.C. v. LeFrak Org., Inc.,* 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp., PLLC,* 570 F.3d 471,

---

of analysis that Plaintiffs' motion for leave to amend is granted and will consider the allegations in the FAC and proposed SAC together when determining whether Plaintiffs have stated a claim. *See Panther Partners, Inc. v. Ikanos Commc'ns., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (leave to amend futile if proposed amended complaint would not state a plausible claim).

[4]     Neither the FAC nor the SAC alleges when any of these statements was made, by whom, or in what context.

475 (2d Cir. 2009)).  Although, ordinarily, the Court may consider only information within the four corners of the complaint, the Court may also consider any materials attached to the complaint and "statements or documents that are incorporated into the [complaint] by reference." *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 160 n.4 (S.D.N.Y. 2015) (citing *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

**I.     Plaintiffs' Common Law Breach of Contract Claims Are Preempted by the LMRA**

The Union and Yeshiva argue that Plaintiffs' common law breach of contract claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 of the LMRA preempts state law breach of contract claims that "depend[] on an interpretation of the collective-bargaining agreement." *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233 (2d Cir. 1997) (quoting *Hawaiian Airlines, Inc. v Norris*, 512 U.S. 246, 261 (1994)). Preemption ensures that federal law, controlling in the area of labor relations, governs questions regarding collectively-bargained rights and the meaning of the parties' collective bargaining agreement.  *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001).

Plaintiffs' claims for breach of the CBA are quintessentially preempted claims.  *See United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990) ("[A]ny state-law cause of action for violation of collective bargaining agreements is entirely displaced by federal law under [Section] 301.").  In order to resolve Plaintiffs' claim that Yeshiva breached the CBA by denying them bumping rights, the Court would be required to interpret the seniority and layoff provisions of the CBA, determine the extent of the union-members' rights under the agreement and the scope of their related rights under Federal labor law.  *See Allocco v. Dow Jones & Co.,* No. 02-cv-1029 (LMM), 2002 WL 1402084, at *4 (S.D.N.Y. June 27, 2002) (claim for breach of a collective bargaining agreement  "on its face" requires the court to determine collectively-bargained rights); *Williams v. Comcast Cablevision of New Haven, Inc.*, 322 F.

5

Supp. 2d 177, 182 (D. Conn. 2004) (noting that there is "no clearer basis" for Section 301 preemption than a claim for breach of the express terms of a collective bargaining agreement).

Plaintiffs' argument that their claims only reference the CBA but do not require an interpretation of the CBA is unpersuasive. Pls.' Yeshiva Opp. at 7. There is a narrow exception to the normal rule of preemption for state law claims that require consultation with a collective bargaining agreement only to resolve factual issues. *See Wynn*, 273 F.3d at 158-59 (citing *Foy*, 127 F.3d at 233-35). In such cases, the court is not required to construe any federal right or entitlement. *See Foy*, 127 F.3d at 235.

Plaintiffs argue that their breach of contract claims only require reference to, and not interpretation of, the CBA. They argue that "there is no genuine issue between the parties" concerning the CBA's meaning, because all parties agree that Yeshiva breached the CBA. Pls.' Yeshiva Opp. at 7. To be sure, Yeshiva does not agree that it breached the CBA. Yeshiva Mem. at 8-9 (arguing that Yeshiva complied at all times with the terms of the CBA). But even if Plaintiffs were correct, it would not follow that their breach of contract claim would not be preempted. Whether Plaintiffs complied with the grievance procedures of the CBA and the relief to which they are entitled would still require the Court to interpret the CBA. In short, Plaintiffs' breach of contract claims against Yeshiva are preempted by the LMRA.

## II. Plaintiffs' Hybrid LMRA Claims Must be Dismissed

A "hybrid" claim under Section 301 has two elements: Plaintiffs must allege a breach of the CBA by their employer (here, Yeshiva) and a breach of the duty of fair representation by their union (here, 1119 SEIU). *See DelCostello v. Int'l Bros. of Teamsters*, 462 U.S. 151, 164-65 (1983). Ordinarily, covered employees are bound by the outcome of collectively-bargained grievance and arbitration procedures. The hybrid cause of action exists to remedy the potential injustice of binding employees to the outcome of that process when their representative, the

union, did not fairly represent them. *See id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967)). To allege a breach of the duty of fair representation, Plaintiffs must establish that the Union's actions were "arbitrary," "discriminatory," or in "bad faith." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001) (citing *Vaca*, 386 U.S. at 190) (additional citations omitted). A union's conduct is arbitrary only if it is outside the "wide range of reasonableness" and bad faith requires a showing of "fraudulent, deceitful, or dishonest action." *Id.* (citations omitted).

Moreover, alleging a breach of the duty of fair representation does not necessarily excuse covered employees from their duty to exhaust *internal* union procedures to challenge the union's handling of their grievance. *See Clayton v. Int'l. Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981) ("national labor policy" furthered by private resolution of disputes). Before bringing a hybrid claim, covered employees are still required to exhaust intra-union procedures unless union officials are "so hostile" that a fair hearing is impossible, internal procedures would be incapable of reactivating the employee's grievance, or would entail an "unreasonabl[e] delay." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 186 (2d Cir. 1998) (quoting *Clayton,* 451 U.S. at 689) (additional citations omitted).[5]

Plaintiffs concede that they did not exhaust their contractual and intra-union remedies. *See* Pls.' Yeshiva Opp. at 10-11; Pls.' Union Opp. at 9-10. Because neither Plaintiff alleges facts sufficient to excuse his failure to exhaust the grievance process or otherwise to state a claim for breach of the duty of fair representation, neither Plaintiff's hybrid claim can survive.

---

[5] The Union bears the burden of establishing the adequacy of internal grievance procedures. *See Maddalone*, 152 F.3d at 186. The Union submitted a declaration from Beverly Glover, a Union contract administrator, and supporting exhibits, including a copy of the Union constitution and the Union's correspondence with Padilla and Amato. Declaration of Beverly Glover dated Mar. 28, 2016 ("Glover Decl."), Dkt. 36 Exs. B-I.

**A. Amato Does Not Plausibly Allege A Breach of the Duty of Fair Representation**

Amato's hybrid claim is flawed at the most basic level. Regardless of whether a covered employee is required to exhaust intra-union grievance procedures, the employee must, at a minimum, give the union some notice of the grievance. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). "A contrary rule would permit an individual employee to completely sidestep available procedures." *Id.* at 653; *see also Herr v. Cineplex Odeon Corp.*, No. 92-cv-5447 (CSH), 1994 WL 75008, at *3 (S.D.N.Y. Mar. 4, 1994) (filing a grievance is a "threshold" requirement of a hybrid claim). The FAC does not allege that the Union was involved in Amato's termination, let alone that its involvement was in bad faith or discriminatory. While the FAC alleges that the Union refused to submit Amato's grievance to arbitration, FAC ¶ 51, Plaintiffs' briefing concedes that Amato never actually filed a grievance, Pls.' Yeshiva Opp. at 10-11. Finally, there is no allegation that Amato brought his complaint to the Union in some way outside the grievance and arbitration process and nothing to suggest that the Union's notification procedures were unknown to Amato or otherwise inadequate.

The proposed SAC fares no better. The SAC does not allege that Amato brought his grievance to the Union's attention nor does it allege facts that would excuse his failing to do so. Amato argues that the Union was so "hostile and discriminatory" towards him that intra-union remedies would have been futile. SAC ¶¶ 24, 62. The only factual support for this allegation contained in the SAC is Amato's allegation that he did not file a grievance because he believed he had "no chance" of a fair hearing or an "adequate award."[6] SAC ¶¶ 23-24. Assuming that

---

[6] Amato also submitted a fact declaration in support of the proposed SAC. Dkt. 41 Ex. B. The Court may not consider evidence outside the pleadings in connection with a motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("'[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment.'" (quoting *Fonte v. Bd. of Managers of Continental Towers*

8

Amato's subjective belief could give rise to a plausible inference that the Union was, in fact, biased or that the grievance and arbitration process would have been futile, Amato does not allege any facts to provide a basis for his belief.  There are no factual allegations that the Union did or did not do anything vis-à-vis Amato, let alone an allegation that the Union took action based upon irrelevant factors or because of animus or political favoritism.  *See Spellacy v. Airline Pilots Ass'n.-Int'l.*, 156 F.3d 120, 127 (2d Cir. 1998) (quoting *Tedford v. Peabody Coal Co.*, 533 F.2d 95, 97 (5th Cir. 1976)).  There are no allegations that the Union did anything that could have led Amato to conclude that resort to contractual remedies would be futile.  *See Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 706-07 (S.D.N.Y. 2007).

### B.  Padilla Did Not Exhaust Internal Union Procedures

Unlike Amato, Padilla did file a grievance, which Yeshiva denied and the Union refused to take to arbitration.  FAC ¶¶ 35, 37.  Padilla concedes, however, that he did not exhaust the internal appeal procedures available to him to challenge the Union's decision.  *See* Pls.' Union Opp. at 9-10.  His failure to do so is fatal to his hybrid claim.

Padilla does not allege any facts that would suggest that Union officials were "hostile" to him, that Union procedures were inadequate to reactive his grievance, or that those procedures would have unreasonably delayed his case.  *Maddalone*, 152 F.3d at 186.  The only relevant allegation in the FAC is the conclusory allegation that the Union's refusal to submit Padilla's grievance to arbitration was "arbitrary, capricious and in bad faith."  FAC ¶ 45.  The SAC adds the single factual allegation that although the Union claims to have made a "thorough investigation," of Padilla's grievance, it cannot point to "any evidence or documentation [it]

---

*Condo.*, 848 F.2d 24, 25 (2d Cir.1988))).  Because the allegations in Amato's affidavit duplicate those in the proposed SAC, even if the Court were to consider the allegations, it would not alter the result.

used" to make the decision not to pursue arbitration. SAC ¶ 22. This allegation falls well short of plausibly alleging that Union officials were so hostile to Padilla that he could not possibly hope to receive a fair hearing. *Maddalone*, 152 F.3d at 186. There is no allegation, for example, that the Union lacked a well-established internal process to address grievances or that the Union's procedures were not followed in this case. *See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994).

Padilla's opposition brief makes several new allegations—unsupported in either the FAC or SAC—that the Court will address only briefly. Padilla argues that the Union was biased against him because his internal appeal would have been heard by Union members employed by Yeshiva. Pls.' Union Opp. at 9. Padilla's claim of wholesale bias is unsupported by any factual allegations. He has not identified a single conflicted individual who participated in his grievance process or who would have participated in subsequent appeals. *Cf. Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330 (1969) (conflict of interest present when board of appeals is composed of union members "against whom [plaintiffs'] real complaint is made"). Padilla also argues that, had he prevailed on his internal appeal, the Union could not fairly represent him because it "tried time and time again to deny his case." Pls.' Union Opp. at 10. This argument is not addressed to any of the three *Clayton* factors. *See Maddalone*, 152 F.3d at 187 (rejecting as speculative argument that a union would have been reluctant to follow through on a reinstated grievance: "[s]ince [plaintiff] never gave the [union] [the] chance to remedy the alleged misconduct internally, we cannot know that the [union] would have ignored [plaintiff's] claims"). Finally, Padilla contends that the Union's internal procedures were inadequate because the Union could not provide relief for his other claims against Yeshiva. Pls.' Union Opp. at 10. Padilla's reference to his other claims, addressed separately below, is at best a red herring. Union procedures are adequate if they provide for reinstatement of the covered employee's

grievance. *See Clayton,* 451 U.S. at 692 n.21 ("by reactivating the grievance, the union might be able to rectify the very wrong of which the employee complains"). That is precisely the relief that was available to Padilla for his grievance that he was wrongfully denied bumping rights. The fact that the Union's internal procedures do not apply to Padilla's retaliation and discrimination claims does not render them inadequate. *See Cox v. Guardian Servs. Indus.,* No. 06-cv-7780 (PKC), 2007 WL 1584179, at *1 (May 31, 2007) (CBA procedures do not apply to Federal, state, or local statutory discrimination claims).

In sum, neither Padilla nor Amato plausibly alleges facts that excuse his failure to exhaust the contractual and internal union remedies available to him. Amato has not provided any support for his allegations that the Union acted arbitrarily or discriminated against him. Padilla has not alleged any facts to show that the Union's internal procedures offered him inadequate relief or that the Union was biased against him. Accordingly, the Union's motion to dismiss Plaintiffs' hybrid LMRA claims is granted.

### III. Plaintiffs Do Not Plausibly Allege Retaliation or Discrimination

In addition to their LMRA and breach of contract claims, Plaintiffs allege that Yeshiva terminated them in retaliation for exercising their rights under the FMLA. Discrimination and retaliation claims are subject to the same plausibility analysis that applies to Plaintiffs' breach of contract and LMRA claims. *See Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 469 (S.D.N.Y. 2011). To survive a motion to dismiss, a plaintiff alleging retaliation or discrimination does not need to state a *prima facie* case under the *McDonnell Douglas* framework, so long as they plausibly allege facts that give rise to an inference of retaliation. *See Boykin v. KeyCorp,* 521 F.3d 202, 212 (2d Cir. 2008) (explaining that *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement" (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 (2002))).

11

Plaintiffs' allegations of retaliation are exceedingly threadbare. At best the FAC alleges that Plaintiffs were terminated close in time to their requests for FMLA leave.[7] Temporal proximity, even of a matter of weeks, is not enough, standing alone, to make Plaintiffs' claims plausible. *See Febrianti v. Starwood Worldwide*, No. 15-cv-0635 (JMF), 2016 WL 502027, at *5 (S.D.N.Y. Feb. 8, 2016). This is particularly true because Plaintiffs acknowledge that they have previously applied for and received FMLA leave without any adverse consequences. SAC ¶ 41; Pls.' Yeshiva Opp. at 3.

The FAC's other allegations are conclusory and too generalized to support a claim of retaliation. Plaintiffs contend that Yeshiva provided inconsistent justifications for their termination, but the FAC does not specify what explanations were given to Plaintiffs (and by whom) or why any inconsistency supports an inference of retaliation. FAC ¶ 33. The FAC also alleges that Yeshiva retained less senior carpenters than Amato and Padilla, but it provides no information regarding the allegedly-retained employees from which the Court could infer that they were similarly situated to Plaintiffs—let alone that their retention is evidence that Yeshiva was retaliating against Plaintiffs for taking FMLA leave. *Id.* ¶ 32.

The additional details contained in the SAC do not make Plaintiffs' claims plausible. Elaborating on the FAC's theory that Yeshiva provided inconsistent justifications for their termination, Padilla and Amato allege that Yeshiva told them they were being terminated because of budget cuts, before saying that their positions were being eliminated, and then that the layoffs were on account of the merger with Montefiore. SAC ¶ 40. It is not at all clear to the Court that those explanations are inconsistent with one another, but even if they are, any

---

[7] The FAC alleges that Padilla was approved for FMLA leave on March 24, 2015, and Amato was approved on April 17, 2015. FAC ¶¶ 23, 25. On the other hand, the SAC alleges that Amato was approved for FMLA leave almost a year earlier, on March 31, 2014. SAC ¶ 38. The actual date on which Amato was approved for FMLA leave is not critical to deciding the Motions to Dismiss.

inconsistency is too slim a reed to support an inference of retaliation.  *Cf. Shapiro v. City of New York*, No. 13-cv-8647 (DLC), 2015 WL 4002437, at *11 (S.D.N.Y. July 1, 2015) (rejecting inference of pretext where "core" of justifications was the same and no "fundamentally different" explanation was provided by defendants (quoting *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994))).  The SAC also alleges that Plaintiffs' supervisor "admonished and yelled" at Plaintiffs when they missed work.  *Id.* ¶¶ 32, 37.  Plaintiffs do not connect their supervisor's complaints about their attendance records to their termination and provide no information regarding the substance of the supervisor's comments or even when the comments were made.  Padilla alleges that his supervisor yelled at him when he called out sick, but does not allege any adverse reaction associated with his exercise of rights under the FMLA.  *Id.* ¶ 32.  Amato says the same supervisor yelled when he "consider[ed]" missing work.  *Id.* ¶ 37.  Standing alone, the allegation that a supervisor shouted when an employee failed to come to work, even if ill, simply does not support an inference that the eventual termination of the employee was retaliation for the employee utilizing FMLA leave.

Plaintiffs' discrimination claims appear to be based on the same facts as their retaliation claims.  The NYCHRL provides a cause of action that is more generous than the Federal or state discrimination statutes in certain respects.  *See Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, No. 12-cv-4221 (LAP)(DF), 2013 WL 3956377, at *11 (S.D.N.Y. July 26, 2013).  But, "at a minimum," plaintiffs must still make plausible factual allegations that their termination was caused "at least in part by [Yeshiva's] discriminatory or retaliatory motives.*"* *Dechberry v. N.Y. City Fire Dep't.*, 124 F. Supp. 3d 131, 160 (E.D.N.Y. 2015) (quoting *Mihalik v. Credit Agricole Chevreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013)).  For substantially the same reasons that Plaintiffs do not state a retaliation claim under the FMLA, Plaintiffs do not state a claim under the NYCHRL.  Neither the FAC nor the proposed SAC provides any factual

basis for the Court to infer that Yeshiva terminated Plaintiffs because of their requests for FMLA leave or because of their underlying disabilities.

## CONCLUSION

Defendants' Motions to Dismiss are GRANTED and the FAC is DISMISSED.  Because the Court has considered the proposed SAC in connection with the Motions to Dismiss and concluded that amendment would be futile in this case, *see Panther Partners, Inc.*, 681 F.3d at 119, Plaintiffs' Motion for Leave to Amend is DENIED.  The Clerk of Court is respectfully requested to close the open motions at Docket Entries 26, 34, and 39 and enter judgment in favor of the Defendants.

**SO ORDERED.**

Date:  November 7, 2016  
      New York, New York

**VALERIE CAPRONI**  
**United States District Judge**